THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT MCCOMB,

Plaintiff, :

v. : Case No. 3:26-cv-84

CITIBANK, N.A., d/b/a CITIRESOLVE, *et al.*, : Judge Walter H. Rice
Magistrate Judge Peter B. Silvain, Jr.

Defendants. :

---

ORDER SUSTAINING MOTION TO COMPEL ARBITRATION AND STAY CLAIMS BY DEFENDANT CITIBANK, N.A., d/b/a CITIRESOLVE (DOC. #8); PLAINTIFF'S CLAIMS AGAINST CITIBANK ARE STAYED PENDING ARBITRATION

---

Before the Court are the Motion to Compel Arbitration and Stay Claims by Defendant Citibank, N.A., d/b/a CitiResolve ("Citibank"). (Motion to Compel, Doc. #8). For the reasons set forth below, the Motion to Compel is SUSTAINED.

## I. Factual Background and Procedural History

On February 2, 2026, Plaintiff filed suit in the Montgomery County, Ohio, Court of Common Pleas against Defendants Citibank, Best Buy, Inc. ("Best Buy"), and Anthony John Doe ("Doe"), "an unknown supervisory employee or agent who exercised decision-making authority over Plaintiff's disputed account[.]" (Compl., Doc. #3, PAGEID 278, ¶ 8). Plaintiff raised claims under the Fair Credit Billing Act of 1974 ("FCBA") and Credit Card Accountability Responsibility and

Disclosure Act of 2009 ("CCDA"), along with numerous Ohio state law claims. (*Id.* at PAGEID 281-87, ¶¶ 27-37). On March 12, 2026, prior to Best Buy or Doe being served, Citibank removed the matter to this Court under federal question and supplemental jurisdiction. (Notice of Removal, Doc. #1, PAGEID 2-3, ¶¶ 5-6, 8-9, citing 28 U.S.C. §§ 1331, 1367).

On March 23, 2026, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* (Doc. #7), and on March 30, Citibank filed the Motion to Compel. (Doc. #8). Therein, Citibank argues that, in addition to the FCBA, Plaintiff's "allegations implicate alleged violations of the . . . Fair Credit Reporting Act [of 1970] ('FCRA') regarding Plaintiff's credit card account with Citibank." (*Id.* at PAGEID 553, citing 15 U.S.C. § 1681 *et seq.*). Citibank claims that the Arbitration Agreement, contained in the Best Buy Citibank Credit Card Agreement ("Card Agreement") between Plaintiff and Citibank, requires that Plaintiff's claims be arbitrated, as "the Arbitration Agreement broadly encompasses 'any claim, dispute or controversy' between Plaintiff and Citibank 'arising out of or relating to' his account and relationship with Citibank." (*Id.*, quoting Card Agreement, Doc. #8-1, PAGEID 574). Moreover, Citibank asserts that the Arbitration Agreement is governed by the Federal Arbitration Act of 1925 ("FAA"), and that, consequently, federal law dictates that the Arbitration Agreement be enforced. (*Id.*, citing 9 U.S.C. § 1 *et seq.*). Citibank notes that district courts across the country have enforced the

same or similar Citibank Arbitration Agreements (*id.* at PAGEID 553-54 (collecting cases)), and asks that the Court do the same here. (*Id.*).

Citibank avers that it issued the Best Buy credit card to Plaintiff on or about May 14, 2018, and that, when the account opened, Citibank included the Arbitration Agreement as part of the overall Card Agreement. (Doc. #8, PAGEID 554, citing K. Mitchell Decl., Doc. #8-1, PAGEID 565, 566, ¶¶ 1, 4-5). "Based on Citibank's records, Plaintiff did not reject the arbitration provision contained in the Card Agreement. Plaintiff used the Account after it was opened." (*Id.* at PAGEID 554-55, citing Doc. #8-1, PAGEID 566-67, ¶¶ 7-8). The Arbitration Agreement states that: **"If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in Court or have a jury trial on that Claim."** (*Id.* at PAGEID 555 (emphasis in original), quoting Doc. #8-1, PAGEID 574). Citibank characterizes Plaintiff's Complaint as: "alleg[ing] that the Account was charged for an item he never received. [Plaintiff] further claims that Citibank failed to correct the Account in response to his dispute, wrongfully engaged in collection activity, and incorrectly reported the Account to credit bureaus." (*Id.* at PAGEID 556). Citibank argues that the gravamen of the Complaint relates to use of his Citibank account, and, the FAA and South Dakota law, which governs the Card Agreement, dictate that Plaintiff and Citibank must proceed to arbitration. (*Id.* at PAGEID 559-60, 561, citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 2002 S.D. 82, ¶ 8 (S.D. 2002);

*Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 1999 S.D. 56, ¶ 11; *Bishop v. Gosiger*, 692 F. Supp. 2d 762, 773 (E.D. Mich. 2010)). Citibank further asserts that "[u]nder South Dakota law, Plaintiff's use of the Account constitutes his acceptance of the terms of the Card Agreement, including the Arbitration Agreement." (*Id.* at PAGEID 560, citing S.D. CODIFIED LAWS § 54-11-9; *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198-99 (S.D. Cal. 2013)). Citibank concludes that, because Plaintiff's claims must proceed to arbitration, this Court must stay all action pending resolution. (*Id.* at PAGEID 563, quoting 9 U.S.C. § 3).

In his memorandum *contra*, Plaintiff argues that "the purported Arbitration Agreement was procured by fraud and misrepresentation and amongst grounds asserted, lacks clear and unmistakable assent, and is subject to genuine issues of material fact that must be resolved by this Court[.]" (Memo. in Opp., Doc. #10, PAEGID 640 (emphasis removed), citing 9 U.S.C. § 2). Plaintiff claims that he "was led to believe that disputes would be handled through standard dispute-resolution, Offline and correction internal procedures, not through binding arbitration." (*Id.* at PAGEID 641, ¶ 4 (emphasis removed)). Because the Arbitration Agreement was fraudulently induced, Plaintiff asserts, the FAA's "savings clause" prevents enforcement. (*Id.* at PAGEID 642-43, ¶¶1-2, citing 9 U.S.C. § 2; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). Plaintiff argues that the Arbitration Agreement was both buried in the fine print of the Card Agreement, and that the Arbitration Agreement was not presented prior to the issuance of the

card. (*Id.* at PAGEID 644, citing R. McComb Aff., Doc. #10-1, PAGEID 650-51, ¶¶ 4-7). He claims that Ohio law requires a preliminary determination of whether, as a matter of law, the Arbitration Agreement was ever entered into. (*Id.* at PAGEID 644-45). Alternatively, Plaintiff asserts that Citibank waited too long to move to compel arbitration, and, consequently, waived any rights under the Arbitration Agreement that it might have had. (*Id.* at PAGEID 647-48).

In Reply, Citibank argues that there is no support for Plaintiff's arguments that the Arbitration Agreement had to be physically or electronically mailed to him separately from the overall Card Agreement for it to be binding, or that he had to affirm his reasoning and understanding of the Arbitration Agreement prior to it taking effect. (Doc. #13, PAGEID 804, citing *Deck v. Miami Jacobs Bus. College Co.*, 2013 U.S. Dist. LEXIS 14845, *13-15 (S.D. Ohio Jan. 31, 2013) (Black, J.)). In fact, Citibank asserts, the United States Court of Appeals for the Sixth Circuit, along with other appellate courts, have upheld enforcement of arbitration clauses "so long as the consumer had an opportunity to review them" and ratified it by use of the credit card, *i.e.*, the consumer accepting his benefit of the bargain. (*Id.* at PAGEID 804-05, citing *Meyer v. Uber Techs., Inc.*, 969 F.3d 66, 75-80 (2d Cir. 2017); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 970-73 (6th Cir. 2007) (applying Tennessee law); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149-50 (7th Cir. 1997)). Further, Citibank claims, the breadth of the Arbitration Agreement's plain language controls over any unwritten understanding Plaintiff may have had,

and encompasses Plaintiff's claims under the FCRA, FCBA, CCDA, and any other statute, even if those statutes were not expressly specified in the Arbitration Agreement. (*Id.* at PAGEID 805-06, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); S.D. CODIFIED LAWS § 53-8-5; *Edgar v. Mills*, 892 N.W.2d 223, 2017 S.D. 7, ¶ 14). Finally, Citibank argues that Plaintiff's merits-based arguments are not properly before the Court, and that the Court must compel arbitration in accordance with the FAA's "liberal federal policy favoring arbitration." (*Id.* at PAGEID 806 (internal citations omitted), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

In his Surreply, Plaintiff argues that the Arbitration Agreement's forum-selection clause, which mandates that arbitration take place in Colorado, is unenforceable, because his documented disabilities make travel impossible. (Doc. #14-1, PAGEID 813, ¶¶ 1-4, citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); R. McComb Disability Aff., Doc. #14-2). Plaintiff also renews his arguments that he never received, much less assented to, the Arbitration Agreement, meaning that "Citibank has not shown a valid agreement to arbitrate." (*Id.* at PAGEID 815, 816, ¶¶ 9-12, 15). Plaintiff further asserts that he is not asking the Court to adjudge the merits of the claims in his Complaint; rather, he is asking the Court to resolve the "genuine dispute as to whether any valid agreement to arbitrate was ever formed." (*Id.* at PAGEID 817-18, ¶ 21).

The matter is now ripe for decision.

## II. Legal Standards

The FAA codifies an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi*, 473 U.S. at 631. Consistent with that policy, the FAA requires that any contractual provision evincing an intent "to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. Upon proper motion by a party seeking to compel arbitration and a judicial determination that the arbitration agreement is enforceable, the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. The Court must be satisfied that a valid arbitration agreement exists before compelling arbitration. 9 U.S.C. § 4. Beyond that threshold determination, however, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (*per curiam*) (internal quotation marks and citation omitted)).

## III. Analysis

Plaintiff concedes that: he held the credit card at issue, the Card Agreement governs the relationship between Citibank and him with respect to the credit card, and the Card Agreement contains a provision requiring any claim arising out of or relating to his use of the card would be subject to binding arbitration; *i.e.*, the

Arbitration Agreement. (Doc. #10-1, PAGEID 650, ¶ 3). Plaintiff does not claim that he did not receive the Card Agreement at all prior to use; rather, he claims that he was never notified that the card agreement contained the Arbitration Agreement or provided with a standalone copy of the Arbitration Agreement. (*Id.* at PAGEID 650-51, ¶¶ 4-5). Plaintiff further asserts that he was not notified that the Arbitration Agreement applied to any federal law claims and constituted a waiver of his right to a jury trial. (*Id.* at PAGEID 651, ¶ 6). Plaintiff argues that, because he lacked a meaningful opportunity to decide whether to accept the Arbitration Agreement, his mere use of the credit card could not constitute acceptance. (*Id.* at PAGEID 651, 652, ¶¶ 5-6, 8, 12).

Plaintiff has a strong equitable argument that arbitration agreements in consumer credit contracts reflect such an imbalance of power that they should not be allowed to be enforced. However, Citibank is correct that, as a matter of law, they are to be enforced in this circumstance, absent very narrow exceptions not applicable here. The Court takes several steps in concluding that Plaintiff and Citibank agreed to arbitrate, and that the Arbitration Agreement is enforceable. *First*, the choice of law section of the Card Agreement is enforceable, and the forum-selection clause does not, as argued by Plaintiff, require him to travel to Colorado to arbitrate any claim. (*See* Doc. #8-1, PAGEID 575 ("Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address. . . . Federal law and the law of South Dakota, where we are

located, govern the terms and enforcement of this Agreement.")). *Second*, the facts that the Arbitration Agreement was not physically or electronically mailed to Plaintiff and that Plaintiff was provided no explanation as to the impact of the Arbitration Agreement (Doc. #10-1, PAGEID 651, ¶ 5) is immaterial; "[u]nder South Dakota law . . . and the FAA, a party is bound by the terms of a contract he accepts, even if he elects not to read those terms." (Doc. #13, PAGEID 804, citing *Nygaard v. Sioux Valley Hospitals & Health System*, 731 N.W.2d 184, 2007 S.D. 34; *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910, 913-914 (N.D. Ohio 2003); *Deck*, 2013 U.S. Dist. LEXIS 14845, *13-15).

*Third*, the Arbitration Agreement affords a card user the option to reject that portion of the agreement, without affecting his use of the card, and provides a user with express instructions on how to do so. (K. Mitchell Decl., Doc. #8-1, PAGEID 566, ¶ 6; quoting Agmt., Doc. #8-1, PAGEID 575). South Dakota law expressly allows for a customer's use of a credit card to constitute acceptance of the card's terms and conditions, which, in turn "creates a binding contract between the card holder and the card issuer[,]" S.D. CODIFIED LAWS § 54-11-9, and Plaintiff used the card without ever rejecting the Arbitration Agreement. (Doc. #8-1, PAGEID 566-67, ¶¶ 7-8; R. McComb Credit Card Stmt., Doc. #8-1, PAGEID 619, 621). Thus, contrary to Plaintiff's assertion (Doc. #14-1, PAGEID 815, ¶¶ 9-11), Plaintiff did assent to all terms of the Card Agreement, including the Arbitration Agreement, by using the card. Courts have repeatedly held that such contracts of

adhesion are neither procedurally improper nor substantively unconscionable. *See, e.g., Cayanan*, 928 F. Supp. 2d at 1208; *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176-77 (N.D. Cal. 2012). *Finally*, having determined that a valid arbitration agreement exists, the Court must enforce that agreement upon proper motion, irrespective of the merits of Plaintiff's arguments. 9 U.S.C. § 3; *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted).

Accordingly, Citibank's Motion to Compel (Doc. #8) is SUSTAINED, the matter is REMANDED to arbitration pursuant to the terms of the Arbitration Agreement, and Plaintiff's claims against Citibank are STAYED pending the outcome of that arbitration.

IT IS SO ORDERED.

August 5, 2026

Walter H. Rice

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT